UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN D'ANGELO, ET AL.<br><br>    Plaintiff,<br><br>v.<br><br>LAURA TACKACS, ET AL.<br><br>    Defendants. | CASE NO..<br><br>JUDGE |

## MOTION FOR PRELIMINARY INJUCTION AND PERMANENT INJUNCTION AND ATTACHED MEMORANDUM OF LAW IN SUPPORT

Plaintiffs pursuant to Federal Rule of Civil Procedure 65 move the Court to enter a preliminary injunction requiring Defendants to immediately release his Dogs and restraining Defendants from seizing any dogs for failure to register when a person is temporarily staying and traveling through Middleburg Heights.

It is Plaintiffs belief that his dogs were illegally seized for failure to register.  According to Ohio Revised Code 955.05 ('Registration of dog or dog kennel during year'), provides in relevant part,

> After the thirty-first day of January of any year, except as otherwise provided in section 955.012 or 955.16 of the Revised Code, every person, immediately upon becoming the owner, keeper, or harborer of any dog more than three months of age or brought from outside the state during any year, shall file like applications, with fees, as required by section 955.01 of the Revised Code, for registration for a period of one year or three years or an application for permanent registration. If the application is not filed and the fee paid, within thirty days after the dog is acquired, becomes three months of age, or is brought from outside the state, the auditor shall assess a penalty in an amount equal to the registration fee for one year upon the owner, keeper, or harborer, which shall be paid with the registration fee. Thereafter, the owner, keeper, or harborer shall register the dog as provided in section 955.01 of the Revised Code, as applicable.

> Every person becoming the owner of a kennel of dogs after the thirty-first day of January of any year shall file like applications, with fees, as required by section 955.04 of the Revised Code, for the registration of such kennel for the current calendar year. If such application is not filed and the fee paid within thirty days after the person becomes the owner of such kennel, the auditor shall assess a penalty in an amount equal to the registration fee upon the owner of such kennel.

In support of this Motion, Plaintiffs tender below a Memorandum in Support of the Motion for Preliminary Injunction, and a Proposed Order.

Respectfully submitted,

/s/ Michela Huth
MICHELA HUTH
(OH Reg. No. 0091353)
PO Box 17
Bolivar, OH 44612
Phone: 330-440-4027
Email: michelahuth.esq@gmail.com
*Attorney for Plaintiff*


/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
(NY Reg. No. 1637677)
120-82 Queens Blvd.
Kew Gardens, NY 11415
Phone: 718-261-0200
Fax: 718-793-2791
Email: richard@thedoglawyer.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN D'ANGELO, ET AL. | CASE NO.. |
| Plaintiff, | JUDGE |
| v. | |
| LAURA TACKACS, ET AL. | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**

Plaintiff, John D'Angelo, hereby moves this Court pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction and temporary ordering Defendants to immediately return his dogs to him and enjoining Defendants from enforcing R.C. 955.05.[1]

As grounds therefore, Plaintiffs state as follows:

**I. PRELIMINARY STATEMENT**

Defendants Laura Takacs, Jim Steinmetz, Jane Doe and the City of Middleburg Heights, Ohio, had no authority to seize Plaintiff D'Angelo's dogs, Dazey, Sasquatch, and Dazey's ten puppies. Ohio Revised Code 955.05 violates Plaintiffs Fourteenth, Fifth Amendment, ADA, Dormant Commerce Clause, and the Ohio Constitution.

Ohio Revised Code 055.05, which is the law upon which Plaintiff believes the seizure and retention of his dogs is premised upon, is unconstitutional both as applied as facially.

---

[1] It is presumed that R.C. 955.95 is the law upon with Defendants premised their seizure and retention of D'Angelo's dogs. However no citations or information has been provided either to D'Angelo or his attorneys as to what crime he committed and what authority warranted the seizure and retention of his dogs.

3

"Vague laws are problematic because they (1) may trap the innocent by not providing fair warning, and '(2) fail to provide explicit standards for those who apply them,'"[2]

R.C. 955.05 is facially overbroad in all its permutations because of how the Defendants define the term "immediate" contained in the Statute.[3] The manner in which the Defendants apply the Statute could not have been predicted in advance.

The Defendants' unconstitutional policies, procedures, practices, and mechanisms can be evidenced through the seizure and retention of D'Angelo's dogs, with no legal justification for either seizure or retention of the dogs. Their unconstitutional policies, procedures, practices, and mechanisms can be evidenced through the fact that there is no process or procedure for D'Angelo to redeem his dogs. At this time he has no information on how to go about the process of getting his dogs back. He was not issued a citation for any violations, and has not been provided any notice whatsoever on how to get his dogs back.

## II. NATURE OF THE RELIEF SOUGHT - PRELIMINARY INJUNCTION

Pursuant to FRCP 65(a), the Plaintiffs are seeking the issuance and entry of a Preliminary Injunction against all Defendants pending the determination on the merits of Plaintiffs' underlying claims set forth in the Third Amended Complaint as follows: (1) preliminarily enjoining the Defendants, their attorney, agents, servants and assigns from enforcing R.C. 955.05 against persons who are temporarily staying in Middleburg Heights and/or who are traveling through that City; and 2) preliminarily requiring Defendants to immediately release D'Angelo's dogs, Dazey, Sasquatch, and Dazey's ten puppies.

---

[2] *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trustees*, 411 F.3d 777, 798 (6th Cir. 2005), quoting *Grayned*, 408 U.S. at 108-09).
[3] See *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999). [E]ven in cases not involving First Amendment rights, we have recognized that courts may engage in a facial analysis where the enactment imposes criminal sanctions." ).

III.  **FACTUAL BACKGROUND**

All of the relevant facts pertaining to this litigation are set forth in detail in the Complaint.[4]  It is presumed that Defendants seized and are retaining D'Angelo's dogs for failure to register his dogs in Cuyahoga County, Ohio.  As stated in the Complaint, and above, no information has been provided to D'Angelo or his Attorneys as to what authority the seizure and retention is premised upon.

On July 2, 2018 Plaintiff John D'Angelo arrived in Medina County, Ohio from Georgia.  On July 3, 2018 he checked-in to a Motel 6 in Middleburg Heights (Cuyahoga County), located at 7219 Engle Road, Middleburg Heights 44130.  D'Angelo stayed in the Motel 6 with his two adult dogs and ten puppies.  His adult dogs are, 1) named Dazey, who is three years old, and 2) Sasquatch, who is a year old.  Dazey is the mother of the ten puppies.  Dazey is D'Angelo's Certified Service Animal.[5]  Plaintiff has a mental impairment that substantially limits one or more of his major life activities.  On July 4, 2018 the Middleburg Heights police arrived at his hotel room due to the fact that friends who were visiting with D'Angelo had removed the smoke alarm in the room so they could smoke cigarettes.  At the time of the removal of the smoke alarm, D'Angelo was not in the room, but had gone to run an errand.  Nothing further occurred with the police during that incident.  At about 9:00 a.m. the next morning, July 5, 2018, while D'Angelo was still sleeping, a knock was heard at the door of his hotel room.  He opened the door and Defendant Takacs, the Animal Control Officer for Middleburg Heights, Ohio, along with another unknown City employee was standing at the door.  During the conversation with Tackacs and the unknown City employee, some people ("Jesus people") arrived to observe apparently from another hotel room.  Tackacs told D'Angelo that he "needs to leave and go to

---

[4] Attached as Exhibit A.
[5] Exhibit A (three pages).

the farm with the Jesus people." D'Angelo told Takacs that he did not want to go to the Jesus people's Christian farm in New York and that due to his PTSD and having them in the room cornering and reprimanding him, it made him feel uneasy. He asked Takacs and the other unknown City employee to leave, however they did not. Takacs told D'Angelo that they could take his dogs because he did not have County Dog Tags. Again, Takacs told D'Angelo that because he did not have dog tags they could take his dogs, but Takacs said "they were not going to take [his] dogs since they saw that [D'Angelo] was taking good care of them."

Takacs and the other city employee then left the room, and immediately pulled into the '5 Guys Burger' restaurant adjacent to the hotel, and sat there in their vehicles. After they left the room, D'Angelo decided to leave the hotel with his dogs, as soon as possible. He arranged a ride, and as he was loading up his property into the vehicle, Animal Control swooped in from a '5 Guys Burger' restaurant, which was adjacent to the hotel. The police also swooped in from another location. As D'Angelo was attempting to load his property into the vehicle, Takacs told D'Angelo that she was issuing him a citation for failure to register his dogs, and that he needed to sign the citation. D'Angelo refused to sign the citation.

He was not given a citation at any time, and as of the date of the filing of this Complaint, he has not been issued a citation. D'Angelo attempted to put his dogs in the car, and at that point Takacs told D'Angelo they were taking my dogs and told D'Angelo that there was nothing he could do about it. At that point, as set forth in the video, attached as Exhibit A, D'Angelo said he had money to pay for the registration. Steinmetz responded we are taking the dogs.

As set forth in the video, Exhibit A, D'Angelo protested this illegal seizure, and informed Takacs and Steinmetz that Dazey (the dog with the puppies) could bite him. This occurred at they were beginning to remove the puppies. Steinmetz responded and said "I'll shoot her."

6

Steinmetz, Takacs, and the unidentified city employee took the dogs into their vehicles and left. At no time have Defendants ever provided D'Angelo notice of how to redeem his dogs, or even provided a location of the dogs. The only information he was provided was a business card of Takacs and a business card of Officer Steinmetz. D'Angelo has called Takacs at least three times and left messages about how to get his dogs back, but he never heard from her.

After July 5, 2018, D'Angelo's attorney, Michela Huth placed five telephone calls to Takacs, the sergeant in charge of the Middleburg Heights police department, and to the Chief of Police in an attempt to locate the dogs and explain that they needed to return the dogs to the legal owner as soon as possible. As of the filing of this Complaint, no returned phone calls have been received. Attorney Michela Huth, D'Angelo and others have placed many phone calls to various dog pounds in an attempt to discover the location of the dogs. It was not until July 10, 2018 that it was discovered that the dogs are at Cuyahoga County Animal Shelter.

Tammy Collins called the Middleburg Heights Police Department on July 9, 2018 and after asking to speak to the Lieutenant and Chief of Police, then spoke to an employee in the service department who informed her the dogs are located at the Middleburgh Height Police Department at 7375 Engle Road, Middleburg Heights, Ohio. Tammy Collins asked the employee if the dogs had been altered in any fashion and whether they were still alive. This employee transferred her to a woman named Micky at Middleburg Heights City Hall. Micky informed Collins that she did not know if they were still alive and/or if they had been altered. She put Collins on hold and called Takacs, however she was unable to reach her. Sergeant Carruthers informed Attorney Huth on July 9, 2018, that the dogs are not at the police station. He said they are at the Cuyahoga Pound Animal Shelter or Middleburg Heights dog holding facility attached to the service department.

On July 10, 2018 Middleburg Heights Law Director, Gary Ebert contacted Plaintiff's attorney, Michela Huth, and informed her that there was a hearing in Middleburg Heights Municipal Court on July 18, 2018.  Attorney Huth asked him what type of hearing, and he said he did not know, but would try to get more details the next day.

D'Angelo's dogs have been in the possession of Defendants for five days, and he has no way of finding them, visiting them, and has no ability to engage in a process to redeem them from the Defendants.

On July 10, 2018 D'Angelo's attorney Michela Huth was informed by an employee (Mindy) of Cuyahoga County Animal Shelter that it has possession of the dogs. Attorney Huth was informed that Cuyahoga County will not return the dogs to D'Angelo, but instead will do whatever the City of Middleburg Height tells them to do.  Cuyahoga County, by and through Mindy Naticchion the Shelter Administrator, that it has no authority to release the dogs to D'Angelo.  Cuyahoga County has had possession of the dogs since July 5, 2018.

On July 10, 2018 Attorney Huth texted Gary Ebert cell phone, Middleburg Heights Law Director, Gary Ebert, to obtain his email address so that he could be given notice of the filings in this case.  Having not heard back from him, Attorney Huth telephoned Mr. Ebert's cell phone and left a message informing him that if he did not provide his email, the Certificate of Service of the TRO would indicate that an email was requested but not given.  On July 10, 2018 at 3:38 p.m. in response to the above call Gary Ebert, Mr. Ebert returned the call to Attorney Huth and indicated the dogs are being held at the Cuyahoga County Shelter and that the dogs will be released sometime to D'Angelo.  No email was provided by Mr. Ebert.  Mr. Ebert stated the dogs would be returned to D'Angelo sometime, but that D'Angelo had to have a house to take the dogs.  Attorney Huth informed him that the dogs are D'Angelo's property and they must be

8

returned immediately with no conditions such as having a house in Ohio. As of the filing of the Complaint and TRO, the dogs have still not been released to D'Angelo. Mr. Ebert also informed Attorney Huth, in the same conversation on July 10, 2018, that D'Angelo has been charged with four criminal violations, but a majority of the details were not available or forthcoming from Mr. Ebert, as of the filing of this Complaint. Mr. Ebert stated he would email those charges to Attorney Huth, but so far, that email has not been received. The only charge Mr. Ebert revealed was dog at large, which is preposterous because the dogs were in the hotel room with D'Angelo.

D'Angelo is temporarily staying in Tuscarawas County until he can get his dogs back. As of the time of the filing of this Complaint, neither D'Angelo nor his attorneys have been informed as to what process or procedure he can utilize to redeem his dogs. There are no provisions for a retention hearing, as far as it is known by D'Angelo and his attorneys.

### IV. THE LAW UPON WHICH IT IS PRESUMED D'ANGELO'S DOGS WERE SEIZED AND ARE BEING RETAINED

Ohio Revised Code 955.05 ('Registration of dog or dog kennel during year'), provides in relevant part,

> After the thirty-first day of January of any year, except as otherwise provided in section 955.012 or 955.16 of the Revised Code, every person, immediately upon becoming the owner, keeper, or harborer of any dog more than three months of age or brought from outside the state during any year, shall file like applications, with fees, as required by section 955.01 of the Revised Code, for registration for a period of one year or three years or an application for permanent registration. If the application is not filed and the fee paid, within thirty days after the dog is acquired, becomes three months of age, or is brought from outside the state, the auditor shall assess a penalty in an amount equal to the registration fee for one year upon the owner, keeper, or harborer, which shall be paid with the registration fee. Thereafter, the owner, keeper, or harborer shall register the dog as provided in section 955.01 of the Revised Code, as applicable.

V. **STANDARD OF REVIEW – APPLICABLE LAWS**

When a district court is asked to issue an injunction, it … balances four factors, "(1) the likelihood that the party seeking the [ ] injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction."[6] A permanent injunction is appropriate where the moving party has demonstrated a likelihood of actual success on the merits, that irreparable harm will result if injunctive relief is not granted, and that no other adequate legal remedy is available.[7]

VI. **PLAINTIFFS' LIKELIHOOD OF SUCCESS ON THE MERITS**

**A. R.C. 955.05 is Void for Vagueness and Overbroad both Facially and As Applied**

R.C. 955.05 is unconstitutional facially and as applied. "The void-for-vagueness doctrine is concerned with 'two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.'"[8] And, as we have seen with D'Angelo's case, a failure to register a dog(s), subjects the dogs to impoundment by the government, with no deprivation hearing, or any other means by which to get the dog(s) back to the legal owner.

---

[6] *Vittitow v. City of Upper Arlington*, 43 F.3d 1100, 1108-09 (6th Cir. 1995); s*ee also Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007) (same). *See* FED. R. CIV. PRO. 65(a).
[7] *City of Parma v. Levi,* 536 F.2d 133, 135 (6th Cir. 1976).
[8] *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 422 (6th Cir. 2014), quoting *FCC v. Fox Television Stations, Inc.*, 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012), citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

R.C. 955.05 is void for vagueness in violation of the Fourteenth Amendment to the United States Constitution's due process protections for failing to give a person fair notice of the conduct proscribed.[9] This Statute does not provide a clear standard for the average person and for law enforcement officials. The Ordinances create confusion and give rise to ambiguity. The Statute fails to provide reasonable and fair notice of the conduct with criminal consequences.[10] If an Ordinance "fail[s] to specify what conduct is prohibited," the ordinance will be struck down "as unconstitutionally vague on its face."[11]

It is presumed that there is a criminal penalty for D'Angelo's failure to register his dog, as his attorney was informed there is some type of hearing in Middleburg Heights Mayor's Court on July 18, 2018.[12] Where criminal sanctions apply, as in the case of failure to register a dog, , "the court must apply a relative strict standard of scrutiny."[13]

The Statute is both vague on its face and as applied. R.C. 955.05 contains the word "immediately." The exact language is as follows,

> After the thirty-first day of January of any year, except as otherwise provided in section 955.012 or 955.16 of the Revised Code, every person, **immediately** upon becoming the owner, keeper, or harborer of any dog more than three months of age or brought from outside the state during any year, shall file like applications, with fees, as required by section 955.01 of the Revised Code, for registration for a period of one year or three years or an application for permanent registration.[14]

---

[9] *United States v. Harriss* (1954), 347 U.S. 612, 617, 74 S.Ct. 808, 812; *See also City of Mesquite v. Aladdin's Castle, Inc.*, 102 S.Ct. 1070, 455 U.S. 283, 289-90, n.12 (1982),
[10] *United States v. Harriss* (1954), 347 U.S. 612, 617, 74 S.Ct. 808, 812.
[11] *Coates v. Cincinnati*, 402 U.S. 611, 612 (1971); see also *United States v. Harriss* (1954), 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996.
[12] At this time, however, there is no further information provided by any government official as to the details of this hearing.
[13] *Belle Maer Harbor v. Charter Tp. Of Harrison*, 170 F.3d 553, 558 (6th Cir. 1999) (internal citation omitted).
[14] Emphasis added.

When a person is traveling through Middleburg Heights and/or Cuyahoga County, a facial reading of the law requires them to "immediately" obtain registration for their dog(s). Immediately is defined by Merriam-Webster as "without interval of time."[15] The statute does not define immediately, nor does Chapter 955. A person could be flying from New York to Texas with their dog, and if the airplane makes a stop at Hopkins International Airport in Cleveland, Cuyahoga County, that person would be required to obtain dog registration under that law. If a person, like Plaintiff D'Angelo, is only staying in a hotel in Middleburg Heights, Ohio (Cuyahoga County) for one night, or even less time, they would be required to get registrations for their dogs. Even if a person is simply stopping to use the bathroom at a gas station in Ohio, they would be obligated under this law to obtain registration for their dog. In fact, even if a person is not stopping in Ohio, but rather driving through it from Pennsylvania to Indiana, they would still be required to obtain registration for their dogs the second they arrive in Ohio. A person could not even bring their dogs to Ohio to travel around or visit with friends, without registering their dog in each and every County they step foot into.

    The law wholly fails to provide notice as to what is prohibited under the law. No reasonable person would presume that simply entering the air space of Ohio would require them to obtain registration for their dogs. No reasonable person would presume that dog registration are required from each and every Ohio County they pass through. The law surely could not have intended this result.

---

[15] Merriam Webster Dictionary, available at https://www.merriam-webster.com/dictionary/immediately.

The lack of a definition of "immediately" and the manner in which the law is being applied, "demonstrates that a standard grounded on [being required to immediately register a dog] in this context is susceptible to a myriad of interpretations conferring on the [police and animal control officers] 'a virtually unrestrained power to * * * [seize and retain a person's dogs and] charge persons with a violation.'"[16] The lack of a definition does not provide a person of notice as to what is prohibited under R.C. 955.05. If words have any meaning, they have to have a consistent meaning. If one uses Defendants' definition of "immediately," then every single person who even flies over Ohio airspace with their dog(s) has to register their dog in each and every County they fly over. If one uses Defendants' definition of "immediately," then every single person who stays at hotels for oven a second in Ohio, must register their dog in every and each County where they are staying at a hotel in. If a person is visiting friends in Ohio even for one second, they must register in that County where they are visiting, and every County they pass through to get to their friends. This is preposterous and the law could not have been intended to create this result. Again D'Angelo was only in Middleburg Heights and Cuyahoga County for less than two days before his dogs were seized and retained by Defendants.

The law is overbroad and vague and thus Unconstitutional.

### B. Arbitrary Enforcement

What is criminally prohibited under R.C. 955.05, is decided and determined by "the moment-to-moment judgment of the policeman on his beat, * * *."[17] D'Angelo was only in Cuyahoga County for less than two days when his dogs were seized, impounded, and retained, for failure to register his dogs in Cuyahoga County. Once again, taken to a point of *reductio ad*

---

[16] See *Belle Maer Harbor v. Charter Tp. Of Harrison*, 170 F.3d 553, 558 (6th Cir. 1999), quoting *Kolender*, 461 U.S. at 360, 103 S.Ct. 1855 (citation omitted).
[17] *Kolender*, 461 U.S. at 360.

*absurdum*, if a person is not even stopping in Ohio, but traveling through in their car with their dog(s), would have to register their dog in every single County they drive through in Ohio, or at a minimum in at least one County they are driving through. A person, who with their dog, is visiting a friend in a County in Ohio, even for two minutes, would have to register their dog in that County. Moreover, there is no information given to a person to enable them to appeal or pursue any remedy to get their dogs back, once they are seized and retained.

### C. Fourteenth and Fourth Amendment Violations

D'Angelo's dogs were illegally seized, impounded, and retained by Defendants. There cannot be any legal justification to seize and retain a person's dogs when they are temporarily staying in a particular jurisdiction. Moreover, there is categorically no means by which gives a person notice as to how to redeem his dogs. Plaintiff D'Angelo has been deprived of visitation with his dogs, and of being able to provide their choice of care, food, medical attention, exercise and other indicia of ownership to their dogs. Not only has he been deprived of visitation with his dogs, including his Certified Service Dog Dazey, neither he nor his attorneys have received a consistent answer as to where the dogs are. His attorney has been told they are at the service building of Defendant Middleburg Heights. His attorney has been told they are at Cuyahoga County Animal Shelter. Others have been told the dogs are at Animal Protection League ("APL") in Cleveland. Yesterday, his attorney was informed they are at the Cuyahoga County Animal Shelter, and have been there since the day they were illegally seized – July 5, 2018.

The hiding of his dogs, and the failure to reveal their location, in addition to other unconstitutional acts of Defendants, effects a significant harm, and an ongoing harm upon Plaintiff and others who have had, or will have their dogs seized and retained under similar circumstances. The seizure of Plaintiff's dogs is unreasonable, *inter alia*, because there exists no

explicit statutory authority to seize a dog when a person is only temporarily in a jurisdiction in Ohio.  The retention of Plaintiff's dogs is unreasonable, *inter alia*, because there exists no explicit statutory authority, or even rules, policies, procedures, regulations, standards or guidelines which provide any information whatsoever to D'Angelo and others, as to how to redeem their dogs once they are seized.  The seizure and retention of the dogs is unreasonable because the individual Defendants have no required specific training or specialized knowledge regarding when a dog can be seized for failure to register that dog.  The seizure is unreasonable because the length of the seizure and retention is completely unknown.  The seizure is unreasonable because of the absence of any rules, guidelines, procedures, policies, regulations or uniform standards to limit the unfettered discretion of the Defendants in enforcing R.C. 955.05 and the lack of any review process or means to challenge the propriety of the seizure and retention of Plaintiff's dogs after seizure renders enforcement of the statute arbitrary and capricious.

There is no meaningful post deprivation remedy because there is no remedy at all.  As stated previously, neither Plaintiff nor his attorney have any idea how to proceed in getting his dogs back, without filing this Injunction.  "The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it."[18]  The unauthorized intentional deprivation of property by the government will constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment because not only is there no meaningful post deprivation remedy, but there is no post deprivation remedy whatsoever in D'Angelo's case.[19]

---

[18] *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
[19] See *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.").

### D. Commerce Clause

The Dormant Commerce Clause prohibits state and local governments from regulating interstate commerce. The Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States." U.S. Constitution, Article I, Section 8, cl. 3.

R.C. 955.05 and Defendant's application of said law violates the dormant Commerce Clause because it hinders interstate commerce. R.C. 955.05 and Defendant's application of said law discriminates against interstate commerce by prohibiting persons traveling through Ohio with their dogs, or visiting Ohio with their dogs, from stepping foot in Ohio without "immediately" paying for, and obtaining registration for their dogs in each and every County they pass through and/or visit.. The discrimination is both facial and as applied. Thus, a person cannot enter Ohio with their dog(s) without being subject to their dogs being impounded and with no manner in which to redeem them once impounded, unless they pay for dog registrations in whatever County they pass through.

### VII. DEFENDANTS WILL SUFFER NO INJURY

Defendants will suffer no injury should the Court enjoin the enforcement of R.C. 955.05 against people who are traveling through Ohio, or temporarily visiting Ohio, with their dogs. The intent of the law has to be that only persons who are residing in a specific County in Ohio must register their dogs in that County.

### VIII. IRREPARABLE INJURY

Plaintiff has already experiences significant injury. His Registered Service Dog and companion animals have been illegally seized, retained, and hidden by Defendants. He will

16


continue to be threatened with irreparable injury. He has already, and will continue to suffer immediate loss of his constitutional rights if the Defendants are not restrained from enforcing R.C. 955.05 and from being required to immediately return his dogs to his possession.

The deprivation of constitutional rights constitutes irreparable injury.[20] The deprivation of property and process in violation of the Fourteenth Amendment, and the deprivation of his rights to be secure in his person and property under the Fourth Amendment, constitutes an immediate irreparable injury appropriate for redress by a preliminary injunction. No monetary remedy will adequately compensate Plaintiffs for the Defendants' unlawful conduct. Without injunctive relief, Plaintiff will continue to suffer irreparable harm as a result of the Defendants' actions, including the deprivation of his property and liberty rights under the Fourteenth and Fourth Amendments of the Constitution of the United States.

## IX. THE BALANCE OF HARMS WEIGHS STRONGLY IN FAVOR OF GRANTING PLAINTIFF THE RELIEF REQUESTED

There is no evidence that the public interest will be harmed if the Court grants temporary injunctive relief. The public has a powerful interest in protecting constitutional rights that is well served by granting injunctive relief here.[21] There is no reason to believe that there is any risk to public safety by barring enforcement of the law against those who are no residence of a particular Ohio County, and by requiring Defendants to immediately return his dogs to his possession. Defendants will suffer no injury should the Court enjoin the enforcement of R.C. 955.05 upon persons who are traveling through, or staying temporarily in Ohio.. The law is being applied unconstitutionally, and therefore enforcement under these facts is unlawful.

---

[20] See *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).
[21] *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 579 (6th Cir. 2002) ("the public clearly has interest in vindicating constitutional right.").

## X. THE PUBLIC WILL BENEFIT

Preliminary relief will benefit the public because it will ensure that the Defendants' are enjoined from continuing to violate constitutional rights of person's who are visiting, or passing through Ohio.

## XI. NO SECURITY REQUIRED

Rule 65(c) states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party found to have been wrongfully enjoined or restrained."[22] As noted by one well-recognized authority, however, "the court may dispense with security altogether if grant of the injunction carries no risk of monetary loss to the defendant."[23] The Sixth Circuit has observed that security is not mandatory under Rule 65(c), and can be dispensed with in the discretion of the court.[24] Because Defendant will suffer no harm, economic or otherwise, no security should be required.

## XII. CONCLUSION

Permanent injunctive relief is justified because Plaintiff has no adequate or complete remedy to redress the wrongs herein complained of other than through injunctive relief. Any other remedy this Court may award would require a multitude of additional suits, impose further irreparable injury to Plaintiff, and would be inadequate to protect Plaintiff from the continuing enforcement of R.C. 955.05. Preliminary injunctive relief is also justified because Plaintiff is likely to succeed on the merits, the illegal seizure and retention of Plaintiff's dogs has caused,

---

[22] FED. R. CIV. P. 65(c).
[23] C. Wright & A. Miller, Federal Practice And Procedure § 2954.
[24] *See Moltan Co. v. Eagle-Picher Industries, Inc.,* 55 F.3d 1171, 1176 (6th Cir. 1995).

and will continue to cause irreparable injury and Plaintiffs will suffer greater harm than Defendants if an injunction does not issue, and an injunction is in the public interest.

For the foregoing reasons, Plaintiffs respectfully move the Court to issue a preliminary and permanent injunction against Defendants preventing them from enforcing R.C. 955.05, except where a person is living in Ohio. Plaintiffs respectfully move the Court to issue a preliminary and permanent injunction against Defendants requiring them to immediately return possession of his dogs to him.

    Respectfully submitted,

    /s/ Michela Huth
    MICHELA HUTH
    (OH Reg. No. 0091353)
    PO Box 17
    Bolivar, OH 44612
    Phone: 330-440-4027
    Email: michelahuth.esq@gmail.com
    *Attorney for Plaintiffs*

    /s/ Richard Rosenthal
    RICHARD BRUCE ROSENTHAL
    (NY Reg. No. 1637677)
    120-82 Queens Blvd.
    Kew Gardens, NY 11415
    Phone: 718-261-0200
    Fax: 718-793-2791
    Email: richard@thedoglawyer.com
    *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above Memorandum was sent to Middleburg Heights Law Director, Gary Ebert by email at gaebert@middleburgheights.com and Cuyahoga County Law Director at Rtriozzi@cuyahogacounty.us, on July 11, 2018.

    /s/ Michela Huth
    MICHELA HUTH